**Reverend Homer GREEN, Appellant,**

v.

**UNITED PENTECOSTAL CHURCH INTERNATIONAL, Appellee.**

No. 03–94–00088–CV.

Court of Appeals of Texas,
Austin.

May 3, 1995.

Rehearing Overruled June 21, 1995.

Will Hampton [Signed Brief], Law Office of Will Hampton, Bob Andrews [Signed Brief], Austin, for appellant.

Kenton P. Campbell [Signed Brief], Thornton, Summers, Biechlin, Dunham & Brown, Inc., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

Appellant Reverend Homer Green sued appellee United Pentecostal Church International ("UPCI") for damages arising from UPCI's cancellation of his affiliated minister's license under theories of contract and tort. The trial court granted UPCI's motion to dismiss for lack of jurisdiction, concluding that the First Amendment to the United States Constitution precluded its jurisdiction over the suit. We will affirm the trial court's order dismissing this action.

## BACKGROUND

UPCI licenses Pentecostal ministers; without a UPCI license, a minister cannot contract for employment with any UPCI-affiliated Pentecostal congregation. Green was a Pentecostal minister licensed by UPCI. In 1989, the Texas District Board of UPCI charged Green with immoral conduct and conduct disruptive to his local congregation, the Westgate Apostolic Church. The Judicial Procedures for Ministers (the "JPFM") included in the Manual of the United Pentecostal Church sets out procedural guidelines for resolving grievances and charges filed against licensed ministers. The JPFM provides that after a District Board files a charge, the accused minister is entitled to a pretrial hearing at which a three-member panel akin to a grand jury receives evidence to determine whether there is sufficient evidence for the matter to proceed to a "jury trial." Accordingly, a pretrial hearing was conducted on November 28 and 29, 1989.

During the time leading up to the pretrial hearing, Green was involved in an unrelated civil suit in Travis County district court against his church and some of its members. *See Green v. Westgate Apostolic Church,* 808 S.W.2d 547 (Tex.App.—Austin 1991, writ de-

nied). The civil suit involved a dispute over control of the Westgate church and its property, and Green sought exemplary damages from several individuals, three of whom came forward to testify at the ecclesiastical pretrial hearing.

The three-member tribunal presiding over the ecclesiastical pretrial hearing determined that sufficient evidence existed to go forward with a trial on the charges against Green, and pursuant to the JPFM, the "jury trial" was scheduled to commence on January 18, 1990. However, two days before trial, UPCI summarily cancelled Green's license and terminated his UPCI credentials. UPCI contends that it terminated Green's license before the "jury trial" because of Green's actions during and after the pretrial hearing. According to UPCI, Green deliberately attempted to intimidate two of the witnesses to the ecclesiastical proceedings by serving them with notices of intent to take their oral depositions in the pending civil suit. UPCI further contends that immediately following the pretrial hearing, Green caused the records and tapes of the hearing to be subpoenaed for use in the pending civil suit in violation of Article V of the JPFM, which states that "[a]ll transcripts and records of the hearing shall be the property" of the Church and that the records "cannot be opened except by approval of the Executive Board." When the General Board of the Church met on January 16, 1990, it determined that Green's intimidation of witnesses warranted immediate termination of his license:

> Motion made and seconded that Homer Green be dropped as recommended by the Presiding Officer. The reason for this being because of *the outrageous and blatant disregard for ethics and Christian principle and complete lack of any attempt on his part to comply with the requirements of the Judicial Procedure* with regard to intimidation of witnesses. Carried. (Emphasis added.)

Green contends that the JPFM guarantees "ecclesiastical due process" to a minister charged with misconduct. According to Green, his license could not be cancelled until a "jury" of his similarly licensed peers found

him guilty of the charges. Based on UPCI's alleged failure to follow the procedural requisites set out in the JPFM, Green filed suit claiming substantial damages arising in contract and tort. UPCI filed a motion to dismiss for want of jurisdiction, claiming that the trial court lacked subject matter jurisdiction over the suit because Green's claim "brings into question the decision of an ecclesiastical body as to the retention of a minister." The trial court agreed and dismissed the suit for want of jurisdiction. Green raises twelve points of error challenging the trial court's judgment.

## DISCUSSION

In his first eight points of error, Green contends that the trial court erred in granting UPCI's motion to dismiss. His arguments raise a single issue for this Court to address—UPCI's authority to determine who will preach in UPCI-affiliated churches. The First Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amends. I, XIV. The Constitution thus mandates that government and religion remain separate and accordingly forbids the government from interfering with the right of hierarchical religious bodies to establish their own internal rules and regulations and create tribunals for adjudicating disputes over religious matters. *See Serbian E. Orthodox Diocese v. Milivoje-vich*, 426 U.S. 696, 708–09, 724–25, 96 S.Ct. 2372, 2380, 2387–88, 49 L.Ed.2d 151 (1976). It has been well settled for over 120 years by the United States Supreme Court that when the highest authority of a church judicatory has decided questions of discipline, faith, or ecclesiastical rule, custom, or law, secular civil courts must accept such decisions as final and binding:

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all ... within the general asso-

ciation, is unquestioned. *All who united themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be vain consent and would lead to total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.*

*Watson v. Jones,* 80 U.S. (13 Wall.) 679, 728–29, 20 L.Ed. 666 (1871) (emphasis added).

■ UPCI's decision to terminate Green's license was a purely ecclesiastical matter. "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *McClure v. Salvation Army,* 460 F.2d 553, 558–59 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972). Green argues that his claim can be resolved on the basis of neutral principles of law without "secular intrusion" into, or "ecclesiastical entanglement" with, any religious matters. We disagree.

We are persuaded by the Fifth Circuit's holding in *Simpson v. Wells Lamont Corp.,* 494 F.2d 490 (5th Cir.1974), that the interaction between a church and its pastor is an integral part of church government:

This case involves the fundamental question of who will preach from the pulpit of a church.... The bare statement of the question should make obvious the lack of jurisdiction of a civil court. The answer to that question must come from the church.... The people of the United States conveyed no power to Congress to vest its courts with jurisdiction to settle purely ecclesiastical disputes.

*Id.* at 492.

■ In resolving the charges against Green, UPCI followed the procedures set out in the JPFM. Based on its determination that Green violated provisions of ecclesiastical conduct prohibiting the intimidation of witnesses and the subpoenaing of church documents, the UPCI Governing Board terminated his license without proceeding to the jury trial. After the revocation of his license, Green appealed the revocation pursuant to the JPFM, and he was dismissed according to the procedures outlined in the JPFM. Notwithstanding Green's claims that UPCI violated its own rules, we conclude that the trial court properly dismissed his claim for want of jurisdiction, correctly refusing to intrude into ecclesiastical rules, policies or decisions.

Plaintiffs' effort to distinguish the long line of precedents on the ground that the Church ... failed to follow its own rules, thereby denying the pastor "due process," is unavailing. We look to the substance and effect of plaintiffs' complaint, not its emblemata. Howsoever a suit may be labelled, once a court is called upon to probe into a religious body's selection and retention of clergymen, the First Amendment is implicated.

*Natal v. Christian & Missionary Alliance,* 878 F.2d 1575, 1577 (1st Cir.1989); *see also Patterson v. Southwestern Baptist Seminary,* 858 S.W.2d 602, 605–06 (Tex.App.—Fort Worth 1993, no writ). Green was dismissed as an act of discipline, and questions of church discipline and government are left to the church, limited only by the courts' supervision of property and civil rights. *See Hughes v. Keeling,* 198 S.W.2d 779, 783 (Tex. Civ.App.—Beaumont 1946, no writ).

■ Green's claim that UPCI's decision was "arbitrary, fraudulent or collusive" does not open the door for this Court to review UPCI's decision. The Supreme Court has left unresolved the question of whether there is room for "marginal civil court review" of the decisions of ecclesiastical tribunals under the narrow rubrics of fraud or collusion; however, it has made clear that there is no "arbitrariness" exception to the general rule that civil courts are bound to accept the decisions of ecclesiastical tribunals on religious matters. *See Milivojevich,* 426 U.S. at

713, 96 S.Ct. at 2382. "Constitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance." *Id.* at 715, 96 S.Ct. at 2383. Civil courts are barred from entertaining claims that ecclesiastical procedures were arbitrary and thus violated fundamental due process rights:

> For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in [a] sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow. . . . But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry. . . .

*Id.* at 713, 96 S.Ct. at 2382. While the Supreme Court has left open the possibility that fraud or collusion claims may serve as vehicles for civil court review of ecclesiastical decisions, Green has failed to establish egregious conduct on the part of UPCI that would trigger our review under such an exception. Green is seeking civil court review of the subjective judgment of UPCI's governing body that his license should be revoked due to his "blatant disregard for ethics and Christian principle." A civil court cannot constitutionally intervene in this dispute because this is exactly the type of intervention the First Amendment was designed to prevent. *See Hutchison v. Thomas,* 789 F.2d 392, 393 (6th Cir.1986). Thus, we overrule Green's first eight points of error. Because of our disposition of these points, it is unnecessary for us to address the four remaining points of error.

## CONCLUSION

Green's complaint directly involves, and would require intrusion into, rules, policies, and decisions that are unmistakably of ecclesiastical cognizance. The First Amendment bars such an inquiry. For this reason, we overrule Green's first eight points of error and affirm the trial court's order dismissing the cause for want of subject matter jurisdiction.