

## NUMBER 13-12-00134-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ALBERT CLEVELAND STAFFORD,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 445th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Albert Cleveland Stafford appeals his murder conviction, a first-degree felony*, see* TEX. PENAL CODE ANN. § 19.02(b)(1), (c) (West 2011), which was enhanced by prior convictions, *see id.* § 12.42(c) (West Supp. 2011). A jury found appellant guilty and assessed punishment at life imprisonment. By eight issues, which we reorganize as seven, appellant argues: (1) the evidence was insufficient to support his conviction;

(2) he was entitled to an instruction on concurrent causation; (3) he was entitled to a lesser-included-offense instruction on aggravated assault; (4) he was not competent to stand trial; (5) the trial court failed to admonish him about the risks and dangers of self-representation; (6) he was not competent to represent himself; and (7) the evidence was insufficient to support the jury's future-dangerousness determination. We affirm.

## I. BACKGROUND[1]

Ricardo Martinez was stabbed several times in the chest, which necessitated his being put on life support. Norma Jean Farley, a forensic pathologist, testified that Martinez eventually died from "complications of stab wounds of the torso, manner homicide." The State charged appellant with Martinez's murder.

Alfredo Castillo testified that he went to visit Martinez at his house on the day he was stabbed. Castillo recounted that appellant "showed up at the screen door on the outside. He didn't come in. He just stood outside the screen door and asked [Martinez] a question and [Martinez] just told him, [']Not now, not at the moment,['] and that was it, [appellant] took off." Castillo went to a nearby convenience store to buy beer, but when he returned to Martinez's house, the door was locked. Castillo knocked on the door several times, but Martinez did not answer. Castillo called Martinez's cell phone several times. He "could hear the phone ringing, but [Martinez] would never answer the phone."

Castillo testified that he took Martinez's vehicle to the convenience store, and at some point realized he had the house key. Castillo unlocked and attempted to open the

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

door, but "somebody shoved it back." Castillo thought Martinez was playing around with him, but when he again tried to open the door, someone again shoved it shut. Castillo said this happened four or five times before he decided to "put a little bit more pressure on" the door. The door finally opened, but appellant stood in the entry. Castillo stated that appellant was holding a knife and told him that he was "going to die like [Martinez], [appellant] was going to kill me [Castillo] . . . ."

Castillo testified that he backed away from appellant, but appellant "kept coming toward me telling me that he was going to kill me, he was going to kill me like he killed [Martinez]." Appellant eventually "turned off on the alleyway," and Castillo fled to a nearby body shop and eventually called 9-1-1. Responding police officers found Martinez's body in the house; he had been stabbed several times in the chest and was unresponsive. Several kitchen knives lay nearby on the floor. Three of them had Martinez's blood on them.

Martinez was taken to the hospital. Detective Samuel Lucio of the Brownsville Police Department testified, "I was advised that [Martinez] had no pulse in transportation, still had no pulse, but they were still working him and that he was very critical." Police officers located appellant nearby and arrested him. Appellant had Martinez's blood on his hands, shoes, and clothes.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant argues the evidence was insufficient to support a guilty verdict. Specifically, appellant contends the evidence was insufficient to show he was

3

the sole cause of Martinez's death because a concurrent cause—namely the removal of Martinez from life support—caused Martinez's death.

## A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Relevant to this appeal, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

4

**B.** **Discussion**

Appellant limits his sufficiency challenge to the element of causation; he does not contest the sufficiency of the evidence to show he intentionally or knowingly stabbed Martinez several times in the chest.[2] Appellant claims the concurrent cause of removing Martinez from life support renders the evidence insufficient to prove appellant caused Martinez's death.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (West 2011). In support of his concurrent-cause theory, appellant notes that when the State first asked the forensic pathologist, Farley, what caused Martinez's death, Farley responded, "Well . . . when somebody lives this long, we usually just call it complications of multiple stab wounds of the torso." Appellant also emphasizes the following exchange between the prosecutor and Farley:

> Q:     So when you say complication of the stab wounds and multiple stab wounds, is it fair to say that it's your opinion that but for having been stabbed in the torso Mr. Martinez would have been alive today?

---

[2] We note that there was substantial evidence showing appellant intentionally or knowingly stabbed Martinez several times in the chest. Castillo testified that he saw appellant in Martinez's house, that appellant claimed to have killed Martinez, and that appellant threatened to kill Castillo. Detective Marian Culver Kingsbury testified that video surveillance from a convenience store and Castillo's cell phone records corroborated Castillo's testimony of going to a convenience store and subsequently calling Martinez several times. A neighbor testified to seeing appellant go to Martinez's house, hearing appellant and Martinez arguing loudly, and seeing appellant leave Martinez's house and walk into the alley. When appellant was arrested he had Martinez's blood on his hands, clothes, and shoes. Detective Juan Hernandez testified that upon executing a search warrant of appellant's apartment, investigators found an apparent blood stain on appellant's front door. Detective Kingsbury testified that the knives found at the crime scene did not match any knives in Martinez's house, but that they did match the brand of knives from a box set of kitchen knives found at appellant's house; the box set had two empty slots, which fitted the knives recovered from the crime scene.

5

A: Well, at the time, yes, he would have been alive. In my opinion, if he hadn't been stabbed, he would be alive. Now, today, if he'd been in a car accident, I wouldn't know, but that day, that's what caused him to go to the hospital.

Lastly, appellant stresses that on cross-examination, defense counsel asked whether taking Martinez off a respirator caused Martinez to "expire," and Farley responded, "Yes."

Appellant pinpoints the removal of life support as the most proximate explanation for Martinez's death, but fails to show that his conduct of stabbing Martinez multiple times in the chest was "clearly insufficient" to cause Martinez's death. *See* TEX. PENAL CODE ANN. § 6.04(a). Appellant's conduct is what necessitated placing Martinez on life support, without which Martinez would have died sooner. The Texas Court of Criminal Appeals has expressed its view of this argument in a similar case:

> The argument advanced by appellant that the life support system caused the death is unpersuasive. [The victim] would not have required any life support had it not been for the actions of appellant. An uninjured person placed on a life support system would not die if the system was disconnected; and but for the actions of appellant, the deceased would never have been placed on life support.

*Felder v. State*, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992) (en banc). For this reason, the court of criminal appeals reasoned that "it can hardly be said that appellant's conduct 'was clearly insufficient' to cause [the victim's] death." *Id.* at 90 n.1.

Similarly, appellant has not established that his conduct was clearly insufficient to cause Martinez's death. On the contrary, the evidence supports a conclusion that appellant's conduct was sufficient to cause the death. In addition to the testimony appellant references, Farley also stated that two of Martinez's stab wounds were fatal and that Martinez died from "complications of stab wounds of the torso, manner homicide."

6

Viewing the evidence in the light most favorable to the prosecution, we conclude a rational fact finder could have found the essential elements of murder, including causation, beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Johnson*, 364 S.W.3d at 293–94. We overrule appellant's first issue.

## III. CONCURRENT CAUSATION

By his seventh issue, appellant argues a concurrent causation jury instruction should have been given based on Farley's testimony. We disagree.

### A. Standard of Review and Applicable Law

When an appellate court is presented with an argument that a trial court committed jury charge error, we conduct a two-step inquiry: "First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal." *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (en banc); *see Benn v. State*, 110 S.W.3d 645, 648 (Tex. App.—Corpus Christi 2003, no pet.). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit that issue to the jury. *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003) (en banc); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (en banc). The evidence which raises the issue may be strong, weak, contradicted, unimpeached, or unbelievable. *Trevino*, 100 S.W.3d at 237; *Muniz*, 851 S.W.2d at 254. A defendant is not entitled to an instruction that is not raised by the evidence. *Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd); *Hutcheson v. State*, 899 S.W.2d 29, 42 (Tex. App.—Amarillo 1995, pet. ref'd).

**B. Discussion**

For appellant to have been entitled to an instruction on concurrent causation, the record had to contain some evidence that the concurrent cause was clearly sufficient to produce the result and the conduct of appellant clearly insufficient. *See* TEX. PENAL CODE ANN. § 6.04(a); *Remsburg*, 219 S.W.3d at 545; *Hutcheson*, 899 S.W.2d at 42. As discussed, appellant fails to show that his conduct of stabbing Martinez multiple times in the chest was "clearly insufficient" to cause Martinez's death. *See Remsburg*, 219 S.W.3d at 545; *Hutcheson*, 899 S.W.2d at 42. The trial court did not err by refusing to give an instruction on concurrent causation. We overrule appellant's seventh issue.

## IV. LESSER-INCLUDED OFFENSE INSTRUCTION

By his sixth issue, appellant argues the trial court erred by failing to give a lesser-included instruction on aggravated assault, which appellant requested. This issue, like the previous two, is premised on appellant's concurrent-cause theory.

**A. Standard of Review**

The determination of whether the trial court should give a lesser-included offense instruction requested by a defendant requires a two step analysis: "(1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). We review the first step de novo. *See id.*

In applying the second prong, we look to see if there is some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* at 145. The evidence must establish the

lesser-included offense as a valid, rational alternative to the charged offense. *Id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included charge. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).

**B.    Discussion**

Because both of the lesser-included-instruction prongs must be satisfied and we consider the second one dispositive of appellant's issue, we will only address the second prong. *See Rice*, 333 S.W.3d at 144; *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007) ("The availability of the lesser-included instruction in a given case still would depend on the second step, whether there is some evidence adduced at trial to support such an instruction."); *see also* TEX. R. APP. P. 47.1.

Appellant avers that the evidence could have shown that he was guilty only of aggravated assault, i.e., that the stabbing caused serious bodily injury rather than death, because removing Martinez from life support was a concurrent cause of Martinez's death. The evidence, however, shows that Martinez died from complications of multiple stab wounds that were inflicted by appellant, and we have concluded that appellant failed to show that his conduct was clearly insufficient to cause Martinez's death; rather, the evidence establishes the opposite—appellant's stabbing caused Martinez's death, despite the doctors' best efforts to save Martinez's life.

We hold there is no evidence permitting a jury to conclude that if appellant was guilty of some offense, he was guilty *only* of aggravated assault. *See Rice,* 333 S.W.3d at 144. The trial court did not err by denying appellant's requested lesser-included instruction. We overrule appellant's sixth issue.

9

## V.  COMPETENCY TO STAND TRIAL

By his second issue, appellant argues that his right to a proper determination of his competency to stand trial was violated because the trial court allegedly failed to follow the mandatory procedures of chapter 46B of the Texas Code of Criminal Procedure to conclude appellant was competent to stand trial.   By his third issue, appellant argues the trial court's failure to properly inquire into his competency violated his due process rights under the United States Constitution.   We review these issues together.   *See McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003) (holding federal due process standards are built into the Texas Code of Criminal Procedure provisions).[3]

On February 2, 2011, the trial court adjudged appellant incompetent to stand trial, and ordered that appellant be committed to a medical facility for observation and treatment in accordance with article 46B.073.   *See* TEX. CRIM. PROC. CODE ANN. art. 46B.073 (West 2006).   On July 28, 2011, the Texas Department of State Health Services informed the trial court that appellant was then competent to stand trial.   On August 18, 2011, there was a status hearing during which appellant's attorney and the prosecutor acknowledged that appellant was deemed competent to stand trial.   The trial court noted on its docket sheet that it found appellant competent to stand trial.

### A.    Applicable Law

Under article 46B, a trial court may determine that appellant is incompetent, either through a hearing or by agreement of the parties.   *See* TEX. CRIM. PROC. CODE ANN. arts.

---

[3]   At the time of *McDaniel v. State*, 98 S.W.3d 704 (Tex. Crim. App. 2003), article 46.02 of the Texas Code of Criminal Procedure outlined competency determination standards.   Effective January 1, 2004, the legislature replaced article 46.02 with article 46B, which now outlines the competency standards. *See* Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§15–17, 2003 Tex. Gen. Laws 57, 72 (current version at TEX. CRIM. PROC. CODE ANN. art. 46B (West 2006 & Supp. 2011)).

46B.051, 46B.053 (West 2006).  Upon finding a defendant incompetent to stand trial, the trial court shall commit the defendant to a mental health facility or residential care facility for examination and treatment toward the specific objective of attaining competency to stand trial.  *Id.* art. 46B.073. The head of the treatment facility shall promptly notify the committing court when the head of the facility is of the opinion the defendant has attained competency to stand trial.  *Id.* art. 46B.080(b)(1).  The head of the facility shall file a final report with the court, and the court shall provide copies of the report to both parties' attorneys.  *Id.* art. 46B.080(c).

A defendant shall be returned to the committing court as soon as practicable after the fifteenth day following the date on which the parties receive service of any report filed by the health facility head under article 46B.080(b).  *Id.* art. 46B.079(b).  On the defendant's return to the court, the court shall make a determination with regard to the defendant's competency to stand trial.  *Id.* art. 46B.084(a).  The court may make the determination based solely on the filed report, unless any party objects in writing or in open court to the findings of the report not later than the fifteenth day after the date on which the report was served on the parties.  *Id.*  If a party objects within the allowable time frame, the issue shall be set for a hearing.  *Id.* art. 46B.084(b).  The record must contain a judgment, order, docket entry, or other evidence indicating the trial court made a judicial determination of regained competence.  *Schaffer v. State*, 583 S.W.2d 627, 631 (Tex. Crim. App. [Panel Op.] 1979).

11

**B. Discussion**

Appellant does not specify which mandatory procedure the trial court allegedly overlooked, and we find none. Appellant complains the trial court did not hold a hearing to determine whether appellant regained competence, but appellant never requested that a hearing be held. *See* TEX. CRIM. PROC. CODE ANN. art. 46B.084. Rather, at the August 18 status hearing, appellant's counsel expressly acknowledged, "I've received his psychological [report] about being competent to stand trial."[4] Appellant did not thereafter challenge the report or request a hearing as outlined in article 46B.084. *See id.* The trial court violated no mandatory procedure in finding appellant competent to stand trial based on the report. *See id.* The trial court memorialized its competency finding on its docket sheet. *See Schaffer*, 583 S.W.2d at 631. There being no violation of the Texas Code of Criminal Procedure or appellant's due process right, *see McDaniel*, 98 S.W.3d at 709, we overrule appellant's second and third issues.

## VI. WAIVER OF TRIAL COUNSEL

Appellant raises two issues regarding his decision to proceed pro se. We review appellant's fifth issue first, whereby appellant claims that the trial court should have, but failed to, engage him in a meaningful colloquy regarding the risks and dangers of self-representation.

---

[4] Appellant argues in his brief that "the docket fails to set forth any information about whether notice was given to the parties of the evaluation report of the North Texas State Hospital on or about 18 August 2011." The comments made by appellant's attorney at the August 18 status hearing, however, show that he had received and reviewed the report by that date.

## A. Applicable Law

The Sixth Amendment to the United States Constitution protects a criminal defendant's right to self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975); *see* U.S. CONST. amends. VI, XIV. A defendant may waive that right, but the waiver must be made competently, knowingly and intelligently, and voluntarily. *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997) (en banc) (citing *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *Faretta*, 422 U.S. at 834–36)). The decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Id.* at 626 (citing *Faretta*, 422 U.S. at 834–36). The decision is voluntary if it is uncoerced. *Id.* (citing *Godinez*, 509 U.S. at 401 n.12).

Once a defendant asserts his right to proceed pro se, the trial court must inform the defendant about "the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with his eyes wide open." *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (citing *Faretta*, 422 U.S. at 835). "When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant that there are technical rules of evidence and procedure, and that he will not be granted any special consideration solely because he asserted his *pro se* rights." *Id.* (quotation and citation omitted). The trial court need not, however, follow a formulaic questioning or particular script in ascertaining the knowing and voluntary nature of the waiver of counsel, and a written waiver of the right is not required. *Cudjo v. State*, 345 S.W.3d 177, 184 (Tex.

13

App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Burgess v. State*, 816 S.W.2d 424, 428–29 (Tex. Crim. App. 1991) (en banc)).

To assess whether waiver is effective, the courts consider the totality of the circumstances. *Williams*, 252 S.W.3d at 356. The court must examine the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Id.* "But a trial judge has no duty to inquire into an accused's age, education, background[,] or previous mental history in every instance where an accused expresses a desire to represent himself." *Id.* (quotation omitted).

**B.    Discussion**

At the November 9 pretrial hearing, appellant informed the trial court that he wished to proceed pro se, which prompted the following exchange:

| THE COURT: | Now, Mr. Stafford, you understand and you've heard preliminarily the dangers of representing yourself?   You understand that? |
|---|---|
| THE DEFENDANT: | I'm not concerned with that issue. |
| THE COURT: | All right.   You understand that you're required to comport yourself as if you were an attorney? |
| THE DEFENDANT: | I can articulate.   I can comport myself. |
| . . . . | |
| THE COURT: | All right.   You understand that you need to be familiar with the rules of criminal procedure and the rules of evidence, and to be quite frank, as [appellant's attorney] mentioned, the success rate of pro se litigants in a criminal trial is very low, sir.   Do you understand that? |
| THE DEFENDANT: | Uh-huh.   I understand that. |

14

| | |
|---|---|
| THE COURT: | All right. And if you go to trial representing yourself, you will be—once again, I'm not here to play favorites. I'm not here to give legal advice. You understand that I can't give you legal advice, and you will be held to the same standards as I hold the State? Do you understand that, sir? |
| THE DEFENDANT: | I understand that. |

We do not agree with appellant that "the record is void of any meaningful communication by the court." On the contrary, the trial court expressly cautioned appellant regarding the dangers and disadvantages of self-representation, the need to understand and apply technical rules of evidence and procedure, and the fact that appellant would not be given special consideration because he asserted his pro se rights. *See Williams*, 252 S.W.3d at 356. We overrule appellant's fifth issue.

## VII. COMPETENCY FOR SELF-REPRESENTATION

By his fourth issue, appellant argues the trial court should have concluded appellant was a "gray area" defendant not competent to represent himself.

## A. Standard of Review and Applicable Law

There is a "mental-illness-related limitation on the scope of the self-representation right." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008); *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). "That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 554 U.S. at 178.

15

The trial judge is in the best position to make the decision of whether a mentally ill defendant is competent to proceed pro se.   *Id.* at 177; *Chadwick*, 309 S.W.3d at 561.

> Accordingly, since this is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, we review the trial judge's ruling for an abuse of discretion.   We afford almost total deference to a trial judge's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor.   We view the evidence in the light most favorable to the trial judge's ruling.   And we will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling when the judge failed to make explicit findings.

*Chadwick*, 309 S.W.3d at 561 (citations omitted).[5]

## B.   Discussion

The trial court did not make any factual findings regarding appellant's competency to represent himself, and there was no separate inquiry regarding the matter.   After admonishing appellant of the risks and dangers inherent to self-representation, the trial court allowed appellant to proceed pro se.   The trial court, however, also appointed a consulting attorney to be available should appellant need or want one.   The trial court, after engaging appellant, observed nothing that undermined appellant's competency to represent himself.   *See Chadwick*, 309 S.W.3d at 562 (holding reviewing courts imply factual findings supported by the evidence and necessary to support the trial court's ruling "if they are not contrary to any specific factfindings.").

---

[5]   *Indiana v. Edwards*, 554 U.S. 558 (2010) and *Chadwick v. State*, 309 S.W.3d 558 (Tex. Crim. App. 2010) protected the State's denial of a defendant's Sixth Amendment right to self-representation under the so-called "mental-illness-related limitation."   Subsequent case law expanded the limitation to reach claims similar to the one asserted here, where appellant challenges the State's *allowance*, rather than *denial*, of appellant's self-representation right.   *See*, *e.g.*, *Cerf v. State*, 366 S.W.3d 778, 782–86 (Tex. App.—Amarillo 2012); *Cudjo v. State*, 345 S.W.3d 177, 183–87 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Valero v. State*, No. 13-09-00167-CR, 2010 WL 2205231, at *5–7 (Tex. App.—Corpus Christi June 3, 2010, pet. ref'd) (mem. op., not designated for publication).

Appellant does not identify what severe mental illness precluded his ability to proceed pro se, and he does not provide any record references exemplifying his incompetence to represent himself. [6] *Cf. Chadwick*, 309 S.W.3d at 562 (holding defendant was incompetent to represent himself because record showed he interrupted his attorney several times, made rambling monologues, made inapposite objections, and, against his attorney's advice, cursed the trial judge "with every Israeli curse there is[]", declaring, "May Yaweh curse you till the end and may I put an eternal indictment on you and I will prosecute you to eternity."). Appellant makes much of the fact that he first requested to proceed pro se in January 2011—one month before the trial court declared him incompetent to stand trial. Appellant deduces he was therefore incompetent in January 2011 when he requested to proceed pro se. Even assuming appellant's conclusion is correct, it does not invalidate the same request that appellant made in November 2011—after he was deemed competent to stand trial.

Appellant also claims that upon being declared competent, the trial court nevertheless ordered an insanity evaluation of appellant. Appellant fails to mention, however, that the order was a granting of his motion to appoint a psychologist to evaluate him in preparation for making an insanity defense. This grant does not reflect the trial court's lack of confidence in appellant's competence to stand trial or proceed pro se.

---

[6] Although appellant fails to mention what mental illness precluded his self-representation, we observe that the Texas Department of State Health Services competency evaluation reports that appellant had been diagnosed with "Bipolar I Disorder, Most Recent Episode Manic, Severe With Psychotic Features." A bipolar disorder alone, however, does not mean a defendant is not competent to represent himself. *Cudjo*, 345 S.W.3d at 187. There must be some additional showing that a defendant is mentally incompetent to represent himself. *Id.* Here, appellant does not cite any additional evidence or explain how his mental illness affected his ability to proceed pro se. Moreover, the competency report noting a bipolar disorder also recorded that appellant was taking medications for his mental health. In short, appellant's bare assertion that he had a severe mental illness that the court should have recognized is insufficient. *See* TEX. R. APP. P. 38.1(i).

17

On the second day of appellant's trial, appellant became upset because the sheriff's office transported him to the courtroom one hour late. Appellant informed the trial court that he was no longer capable of comporting himself, and he withdrew from self-representation. Appellant allowed his consulting attorney to assume lead counsel, and appellant requested to be excused from being present at his trial, which the trial court granted. We observe that, until that moment, appellant made appropriate pretrial motions, conducted reasoned voir dire, made proper legal objections, such as hearsay and speculation objections, cross-examined witnesses, gave an opening statement, and even discussed nuanced legal issues such as optional completeness, chain of custody, *Miranda* issues, and suppression issues. Appellant showed respect for the trial court, the attorneys, and the witnesses. *See Cudjo*, 345 S.W.3d at 186–87 (holding defendant's clear communications, coherent questions, objections, respect for the trial court, attorneys, and witnesses, and ability to advance a defensive theory showed the defendant was competent to represent himself). In other words, the trial court was never put on notice by appellant's performance or conduct that a severe mental illness hampered his ability to represent himself.

The trial court was in the best position to evaluate whether appellant manifested a severe mental illness that would render him incompetent to proceed pro se. *See Edwards*, 554 U.S. at 177; *Chadwick*, 309 S.W.3d at 561. Construing the evidence in the light most favorable to the trial court's ruling, we conclude, in the absence of countervailing evidence, the trial court did not abuse its discretion in allowing appellant to

18

exercise his Sixth Amendment right to represent himself. *See Chadwick*, 309 S.W.3d at 561. We overrule appellant's fourth issue.

## VIII. FUTURE DANGEROUSNESS FINDING

By his eighth issue, appellant challenges the sufficiency of the evidence supporting the jury's future-dangerousness determination. After reviewing the trial court's punishment charge and judgment, we find no future dangerousness instruction to the jury or determination by the jury. Appellant's punishment was enhanced pursuant to the jury finding that appellant was a repeat felony offender. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2011). We overrule appellant's eighth issue.

## IX. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of October, 2013.

19