Frank Moreno **VALDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. C14–90–00894–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 12, 1992.

Catherine Greene Burnett, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from appellant's conviction for aggravated possession of a controlled substance with intent to deliver. The jury sentenced appellant to life imprisonment and a fine of $500,000.00 based on one enhancement paragraph. The primary issue on appeal is the action taken by the trial court regarding appellant's pro se representation. We affirm the conviction by the trial court.

Appellant's story begins on September 20, 1988 when Officer R.J. Vargas of the Houston Police Department met an informant who introduced him to appellant's co-defendant. The officer was conducting an undercover narcotics investigation and met with the co-defendant to discuss a drug buy. The officer explained to the co-defendant that he wanted to buy three kilograms of cocaine. The co-defendant offered to get the cocaine for a price of $18,000.00 per kilogram. He explained that he needed to get in touch with his supplier and that he could beep the officer on his pager once the deal had been arranged. In the morning of September 21, 1988, the co-defendant beeped the officer, and the officer returned the call. When he called the number given by the co-defendant, the officer realized that the call came from a particular room in a motel nearby. The co-defendant told Officer Vargas that his connection had the drugs. The co-defendant told the officer that the cocaine was in the motel room. They planned to meet that afternoon to make the sale.

Officer Vargas asked his informant to find out exactly where the cocaine was being stored. The officer's first contact with appellant occurred on September 21 when the officer called and appellant answered the phone. When asked if everything was ready for the sale, appellant said yes and that the officer should talk to the co-defendant. Once the officer was confident that the drugs were in the room and ready for sale, he obtained a search warrant for the motel room based on this information. Officer Vargas attended the prearranged meeting with the co-defendant at the motel. The officer refused to turn over the money until he had seen and sampled one kilo of the cocaine. The co-defendant delivered the one kilo. After testing it Officer Vargas gave the bust signal. The arrest team prepared to enter the motel room as the officer left on the pretense of getting the money. Appellant approached the motel room at the same time the arrest team moved in. He saw the team and slowed down. He watched the officers for a minute and then started to run away. The officer caught appellant and arrested him after a search of the motel room connected appellant with the drugs.

The search turned up the other two kilos of cocaine, and a plate with lines of cocaine on it set up for personal use. Various personal items of appellant's were also found in the room. There was a pill bottle with appellant's name on it on the nightstand and a number of photographs of appellant. Appellant's girlfriend was also in the room. A .38 caliber pistol was found on the floor near appellant's girlfriend. An analysis of the substance found in the room

showed that it was cocaine in the amount of three kilograms.

■ Appellant asserts seven points of error. We overrule all seven. The first point presented is that the trial court erred in sua sponte excusing potential jurors who were not absolutely disqualified as a matter of law. This point is not preserved for our review because appellant failed to object to the jury panel at the time they were empaneled. In order for this to constitute reversible error which does not require objection appellant must show that the harm could not be cured below. *Warren v. State*, 768 S.W.2d 300, 303 (Tex.Crim.App. 1989). Appellant failed to object and has not shown that this error was incurable. This error is not preserved for our consideration and it is overruled.

Appellant's next three points of error can be effectively dealt with together because they concern the exercise of his right to self-representation. In the second point appellant argues specifically that he should not have been permitted to exercise this right to represent himself because he was not given adequate warnings. Appellant claims in his third point of error that he was improperly permitted to represent himself at trial and that the trial judge should have halted the proceedings when the facts demonstrated that appellant's prior waiver was not adequate to ensure a fundamentally fair trial. The fourth point contends that as a matter of state constitutional law an assertion of the right to self-representation is subject to reconsideration by the trial court in light of the quality of the performance.

■ The court of criminal appeals has set the standard to be applied to determine if a defendant should be allowed to exercise his right of self-representation. That standard requires the defendant to show only sufficient intelligence and capacity to waive his right to counsel, and the ability to appreciate the practical disadvantages he will confront in representing himself. *Burton v. State,* 634 S.W.2d 692, 694 (Tex. Crim.App.1982). It is clear under the law that a defendant does not need to have the skill or experience of an attorney in order to competently and intelligently choose self-representation. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989); *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Furthermore, the court of criminal appeals has made it clear that in keeping with *Faretta* a trial court may not impose an attorney upon a defendant against his will. *Burgess v. State,* 816 S.W.2d 424 (Tex. Crim.App.1991).

■ In this case appellant was given ample opportunity and information from which he could "competently and intelligently choose self representation." The trial court held four separate hearings discussing the exercise of this right by appellant. During each of these hearings appellant reiterated his desire to represent himself and an understanding of the problems which would confront him during the trial. He informed the judge that he had represented himself in a criminal trial before and knew what he was doing. The trial court questioned appellant concerning his background, age, experience and education during the hearings on November 7, 1989 and January 24, 1990. The court went so far as to appoint a stand-by trial attorney to assist appellant. Appellant refused to listen to the attorney. He repeatedly insisted on representing himself, and refused to accept court appointed counsel. The trial court did all it could to preserve appellant's right to counsel without invading his right to self-representation. Under these circumstances it is clear the trial court adequately informed appellant of his rights and the obstacles of self-representation, not once but four times. Appellant competently and intelligently exercised his rights under the law and, the trial court committed no reversible error in refusing to infringe on those rights.

Appellant also asserts under these points that the trial court's appointment of stand-by counsel deprived him of his right to self-representation. This issue has been settled by the court of criminal appeals in *Scarbrough,* 777 S.W.2d at 92. The court explained that appointment of such stand-by counsel does not violate a defendant's

rights if the accused has actual control over his own defense and his appearance before the jury as a pro se defendant is not undermined.

Accordingly we overrule all three of appellant's points of error dealing with his pro se representation.

 Appellant asserts in his fourth point of error that the prosecutor improperly castigated him during final argument for the exercise of his right to self-representation. Appellant objected to the prosecutor's comment regarding the self-representation, but failed to state any specific legal grounds for that objection. A general objection does not preserve error on appeal. *Denison v. State,* 651 S.W.2d 754, 760 (Tex. Crim.App.1983). In order to preserve such an error for consideration on appeal the defendant must make a timely objection which specifically states the legal basis for the objection. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). According to the statement of facts appellant failed to state a specific legal basis for the objection. Appellant only objected to the argument as improper and the court overruled him. This error has not been properly preserved for review on appeal.

 Appellant asserts that in *Hawkins v. State,* 613 S.W.2d 720, 726 (Tex.Crim. App.1981), the court of criminal appeals found the statement by the prosecutor regarding the defendant's exercise of his rights to be so remarkable that error need not be properly preserved. Nevertheless, the court found that the trial court's error in failing to sustain defendant's objection was harmless error. *Hawkins,* 613 S.W.2d at 729. In the harmless error analysis the appellate court is to calculate as much as possible the probable impact of the error on the jury in light of other evidence. *Harris v. State,* 790 S.W.2d 568, 586 (Tex.Crim. App.1989); Tex.R.App.P. 81(b)(2). Even if the failure of the trial court to sustain appellant's objection to the prosecutor's argument was error, it was harmless error. After examining the entire argument made by the prosecutor it is clear that he emphasized appellant's right to a day in court. From the trial court record it is evident

that the jury was well aware that appellant was exercising his right to represent himself. This was discussed with the jurors by the judge and both attorneys during voir dire and when the jury was empaneled. The jurors were aware that the trial was not going to operate as it normally would if appellant was represented by counsel. Even if appellant preserved this for our review and this comment by the prosecutor was error, its effect was dissipated and did not interfere with the functioning of jury in determining the facts and did not contribute to the verdict. *Harris,* 790 S.W.2d at 587. We overrule appellant's fifth point of error.

 In his sixth point of error appellant complains of the trial court's refusal to allow appellant to question his girlfriend about the police search of her purse. Appellant specifically complains that he was denied an opportunity to present defensive evidence concerning his link to the contraband. This error was not preserved for our review.

Appellant attempted to question his girlfriend regarding the police search of her purse which contained pictures of appellant. The prosecutor objected to this line of questioning on the grounds that it was irrelevant, and the court sustained the objection. Then appellant continued to question his girlfriend on this search and again the prosecutor objected and was sustained by the trial court. Appellant made no bill of exceptions or other offer of proof to show this court what relevance this line of questioning might have. Tex.R.App.P. 52(b); Tex.R.Crim.Evid. 103(a)(2). This court has nothing before it to determine if the trial court committed error in denying the line of questioning. Appellant has not properly preserved this error for our review. Appellant's sixth point of error is overruled.

 In his final point of error appellant asserts that reversible error was committed when void prior convictions were introduced, over objection, at the punishment phase. We overrule this point of error.

 The state introduced copies of the judgments and sentences in cause numbers 227,779, 227,340, 227,341 and 344,796.

The state tied the appellant to the judgments and sentences by way of his fingerprints. The state made a prima facie showing of the regularity of the judgments and sentences in cause numbers 227,779, 227,340, 227,341 and 344,796. The court of criminal appeals has made it clear under these circumstances the appellate court will indulge every presumption in favor of the regularity of the documents and that the recitations are binding in the absence of direct proof of their falsity. *Breazeale v. State,* 683 S.W.2d 446, 450 (Tex.Crim.App. 1985); *Robinson v. State,* 739 S.W.2d 795, 799 (Tex.Crim.App.1987). The case law indicates that once the documents are introduced into evidence, the burden shifts to the defendant to make an affirmative showing of any defect in the judgment. *Johnson v. State,* 725 S.W.2d 245, 247 (Tex. Crim.App.1987); *Robinson,* 739 S.W.2d at 799.

In this case appellant attempts to make a collateral attack on the judgments based on the assertion that the indictments for delivery of cocaine were fundamentally defective. Appellant presented no indictments to the trial court for consideration during the punishment phase. The mere assertions by appellant that the indictments were fundamentally defective is not sufficient to overcome the presumption. Appellant is attempting to make a collateral attack on the judgments and sentences and this is permissible only if the judgments are void or tainted by constitutional defects. *Galloway v. State,* 578 S.W.2d 142, 143 (Tex.Crim.App.1979). Under *Galloway* lesser infirmities may not be raised by a collateral attack. Appellant has failed to present anything for review under this point of error other than mere allegations that the indictments were fundamentally defective. The indictments were never presented to the trial court and as such are not before this court.

Accordingly we overrule all of appellant's seven points of error and affirm the judgment of the trial court.