**George Edward BLACKSHEAR,
Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–09–01059–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 24, 2011.

Randall J. Ayers, Houston, for appellant.

David Christopher Newell, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

A jury found appellant George Edward Blackshear guilty of possession of a controlled substance, enhanced by two prior felony convictions. The jury, however, could not agree what punishment to give him, and the trial judge declared a mistrial. A second jury, empanelled to determine punishment only, found both enhancements true and sentenced Blackshear to eight years' imprisonment and a $2,500 fine. On appeal, Blackshear com-

plains that the trial court erred in (1) overruling defense counsel's objection to the admission of extraneous conduct and (2) denying Blackshear's motion for continuance, which he sought to obtain a transcript of his first trial for use at his second trial. We reverse and remand for a new trial on punishment only.

## I

Houston Police Department narcotics officers arrested George Edward Blackshear for possession of less than a gram of cocaine following an undercover sting operation. On the night of August 19, 2009, officers J. Castro and Thomas Chapman drove in an unmarked vehicle to a gas station they testified was known for illegal drug activity. They saw Blackshear and another man later identified as Andruce Ball waving people down in the parking lot. Officer Castro exited the unmarked car and walked to a pay phone in the parking lot, where he was approached by Ball. After a brief conversation, Ball waved for Blackshear to join them. Officer Castro testified he then told Blackshear he wanted to buy some crack cocaine and that Blackshear pulled from his pocket a baggie containing what appeared to be several crack cocaine rocks. Officer Castro then gave a "bust" signal to Officer Thompson, and uniformed officers moved in to arrest Blackshear and Ball. The officers seized a bag of rocks from Blackshear's pants, which field-testing and subsequent lab analysis confirmed was cocaine.

Ball testified at Blackshear's trial that he had not waved down anyone at the gas station, but rather that the officers had approached him and given him money to buy drugs. Ball testified he did not buy any drugs but kept some of the officers' money. Ball further testified that Blackshear was an employee of the gas station and was sweeping the parking lot when the officers arrived. Ball testified the officers never spoke to Blackshear and that Blackshear was in no way involved in the transaction. Upon arresting Ball and Blackshear, Ball testified officers threatened to "put a rock on" both men.

## II

■ In his first issue, Blackshear complains the trial court erred by allowing Officer Castro to testify he knew Blackshear by his nickname through "other drug dealers on the street in that particular area." During direct examination of Officer Castro, the following exchange took place:

Q. Earlier on direct you testified that you knew Mr. Blackshear as a nickname by Ren?

A. Yes.

Q. How did you know that?

A. A bunch of drug users and—

MS. SHANNON (defense counsel): Your honor, I'm going to object.

MR. WOMBLE (prosecutor): Judge, she's opened the door.

THE COURT: It's overruled.

Q. How do you recognize him as Ren?

A. Through other drug dealers on the street in that particular area.

Q. Have you seen Mr. Blackshear in the area on the streets before?

A. Yes, I have.

Q. Few or many times?

A. I'd say two or three times when I'm purchasing narcotics from different individuals.

Blackshear complains Officer Castro's testimony violates Texas Rule of Evidence 404(b), which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See* Tex.R. Evid. 404(b); *Johnston*

*v. State,* 145 S.W.3d 215, 219 (Tex.Crim. App.2004). The testimony was elicited, Blackshear argues, "solely to imply that [Blackshear] was a drug dealer . . . [a]nd that [Blackshear] had been involved in other extraneous drug transactions with the officer . . . ." Blackshear further argues that even if the extraneous conduct is logically relevant to prove some fact, it is not relevant to a disputed "fact of consequence" in the case apart from its tendency to prove conduct in conformity with character, and that any probative value is substantially outweighed by the danger of unfair prejudice. *See Johnston,* 145 S.W.3d at 219–20 (citing Tex.R. Evid. 403 and 404(b)).

▮▮▮ The State initially argues defense counsel failed to preserve error. We agree. To preserve error for appellate review, a defendant must make a timely objection that specifically states the legal basis for the objection. *See* Tex.R.App. P. 33.1(a); *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). To make a specific objection, a party must " 'let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.' " *Shaw v. State,* 329 S.W.3d 645, 654 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd) (quoting *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992)). The failure to state any legal basis for an objection amounts to a general objection that preserves nothing for review. *Valdez v. State,* 826 S.W.2d 778, 782 (Tex.App.-Houston [14th Dist.] 1992, no pet.); *see also Denison v. State,* 651 S.W.2d 754, 760 (Tex.Crim.App.1983) (holding an objection that was "general in nature" fails to preserve error).

Here, defense counsel objected but did not provide any legal explanation for why the testimony was inadmissible. *See Med-*

*ina v. State,* 7 S.W.3d 633, 643 (Tex.Crim. App.1999) (holding that general relevancy objection did not preserve error as to appellant's claim that extraneous offense evidence was inadmissible under Rule 404(b)). Nothing in the record shows that defense counsel intended to rely on either Rule 403 or Rule 404, and there is no indication the trial judge understood the basis for the objection absent any explanation. *See Rezac,* 782 S.W.2d at 870; *Denison,* 651 S.W.2d at 760; *Shaw,* 329 S.W.3d at 654; *Valdez,* 826 S.W.2d at 782. Having been presented with nothing for review, we overrule Blackshear's first issue.

## III

▮▮▮ In his second issue, Blackshear complains the trial court erred in denying his motion for continuance to obtain a transcript of his first trial before convening his second trial. The jury in Blackshear's first trial returned a guilty verdict but could not agree on punishment. After declaring a mistrial, the court announced it would empanel a new jury the same day to re-try Blackshear on punishment only. Defense counsel immediately requested a continuance to attain a copy of the transcript from the previous trial, asserting "it would be ineffective assistance of counsel without having it, unless [the court reporter] can make it at lunchtime . . . ." The trial judge denied the motion, based on "the length of the testimony in this case being less—total, than three hours, if you take the time they were on the stand . . . ." The trial court also noted guilt was no longer an issue and that new jury would have only punishment to consider. A jury for Blackshear's second trial was chosen the same day, and the case was tried the following day. The second jury, finding two enhancements true, sentenced Blackshear to eight years' imprisonment and a $2,500 fine.

The State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal when those tools are available for a price to other prisoners. *See Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). Among these basic tools is a transcript of prior proceedings when needed for an effective defense or appeal. *Id.; White v. State,* 823 S.W.2d 296, 298 (Tex.Crim.App. 1992). In determining whether a defendant needs a transcript, the *Britt* court took two factors into account: (1) the value of the transcript to an effective defense, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. *Britt,* 404 U.S. at 227, 92 S.Ct. 431; *White,* 823 S.W.2d at 298.

In considering the first factor, the *Britt* court noted that "our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." *Id.* at 228, 92 S.Ct. 431. Ordinarily, the court concluded, a transcript of a prior mistrial is valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses. *Id.* The Court of Criminal Appeals has expressly presumed a defendant's need for a transcript and has imposed upon the State the burden to rebut the presumption. *See Armour v. State,* 606 S.W.2d 891, 894 (Tex.Crim.App. [Panel Op.] 1980).

As for the second factor, according to the *White* court "requiring the defendant to rely on memory or notes from the previous trial or providing limited access to the court reporter during the course of the second trial is generally insufficient."

*White,* 823 S.W.2d at 298 (discussing *Britt,* 404 U.S. at 229, 92 S.Ct. 431). Under the facts of *Britt* itself, however, the court determined that an acceptable alternative was indeed available. In that case the evidence showed the court reporter "would at any time have read back to counsel his notes of the mistrial, *well in advance of the second trial,* if counsel had simply made an informal request." *Id.* (emphasis added).

The facts in this case are similar to those facing the Court of Criminal Appeals in *White v. State.* Like this case, the arrest in *White* resulted from a narcotics sting. 823 S.W.2d at 300. The first trial in *White* consisted of two hours of testimony, while the testimony in this case's first trial lasted about three hours. *See id.* at 297. After the trial judge declared a mistrial in *White,* he set the case for a second trial four days later. *Id.* The second trial in this case occurred the day after the first trial. And the trial judges in both cases based their denial of the defendant's motion for continuance on the short duration of testimony at the first trial and the fact that the second trial was to occur quickly on the heels of the first.[1] *See id.* at 297–98. The *White* court analyzed *Britt* and its own relevant case law and concluded the denial of the motion for continuance was reversible error. *Id.* at 299–300. There is, however, a key distinction between this case and *White.* In this case, the jury agreed on a guilty verdict but not on punishment. The parties do not point to, and we are not aware of, any reported decisions addressing the requirement to provide a free transcript for a retrial on punishment only.

The State argues Blackshear did not need a transcript of the first trial because

---

1. The trial judge in *White* also refused to continue the case because all of the persons involved in the first trial, including the court reporter, were also participating in the second trial. *White,* 823 S.W.2d at 298.

it concerned the guilt-innocence determination and the second trial would concern just punishment. Therefore, the State contends, "any potential impeachment of the State's witnesses based upon their prior testimony ... would have necessarily focused on *whether* [Blackshear] had committed the crime and not *how* he had done so, an irrelevant inquiry in light of [Blackshear's] conviction." In support of this contention, the State directs us to *Oregon v. Guzek*, in which the United States Supreme Court held that neither the Eighth nor the Fourteenth Amendment requires the admission of "residual doubt" evidence at the punishment phase. *See* 546 U.S. 517, 523–25, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006) (holding defendant did not have constitutional right to present new alibi evidence at sentencing).

We acknowledge that certain constitutional guarantees are inapplicable at the punishment phase. Likewise, evidence that is otherwise inadmissible in the guilt-innocence phase is often properly introduced at the punishment phase. Nevertheless, under the facts of this case, we cannot say that Blackshear has shown no need for a transcript just because the second trial concerned punishment only.

The nature of the testimony presented at Blackshear's retrial makes it unlike the typical punishment-phase proceeding. At his first trial, the State did not offer any additional witnesses at the punishment phase, choosing instead to re-offer the evidence put forth at the guilt-innocence phase. On retrial, however, the State put on five witnesses, all of whom testified at the guilt-innocence phase the first time. Although the retrial was technically on punishment only, the State essentially presented the same evidence and elicited the same testimony as it did during the guilt-innocence phase of the first trial. Rather than call witnesses to testify to facts related only to punishment, the State proffered evidence focused on Blackshear's guilt. The State's strategy was reasonable. It is difficult to ask a new jury to assess punishment without any context of the defendant's crime or the evidence that convinced a previous jury to find him guilty. But the State's strategy at trial undermines its argument on appeal that Blackshear had no need to impeach the witnesses against him.

In the first trial, the jury could have relied only on the evidence from the guilt-innocence phase when considering Blackshear's punishment, because no further evidence was presented. *See Duffy v. State*, 567 S.W.2d 197, 208 (Tex.Crim.App.1978) (holding the jury can consider at the punishment phase all evidence adduced at the guilt-innocence phase). In the second trial, essentially the same testimony was presented for purposes of punishment, and again the State offered no additional witnesses beyond those it offered at the guilt-innocence phase of the first trial. Accordingly, at the State's behest, the second jury was assessing punishment on essentially the same evidence as the first jury determined guilt. The State argues Blackshear did not need to impeach the witnesses at his retrial because any impeachment would have gone to *whether* the defendant committed the crime, whereas the evidence at the punishment phase goes only to *how* the crime was committed.

The difference is that whenever a witness testifies twice about the same thing, there is a chance his story will change. It is through impeachment that a cross-examiner exposes such flaws in testimony. In the first trial, no witness testified for a second time during the punishment phase—the State merely re-urged the testimony already given. But at the retrial, the witnesses from the first trial offered new testimony about the same set of facts.

Blackshear's counsel should have been able to use the transcript from the first trial in his cross-examination in the second.

 We conclude the value of the transcript to Blackshear at his retrial was not diminished merely because his retrial concerned punishment only. *See Britt*, 404 U.S. at 227, 92 S.Ct. 431. Because the procedural and substantive differences between the guilt-innocence and punishment phases of a criminal trial form the only basis for the State's contention that Blackshear did not need a copy of the transcript, we find the State has failed to rebut the presumption that a defendant needs a transcript of a prior mistrial to mount an effective defense. *See Armour*, 606 S.W.2d at 894. Furthermore, there is no indication from the record, nor does either party suggest, that "alternative devices" were available that would "fulfill the same functions as a transcript." *See Britt*, 404 U.S. at 227, 92 S.Ct. 431. Accordingly, the trial court reversibly erred when it denied Blackshear's motion for a continuance to obtain a copy of the transcript from his first trial.[2] *Britt*, 404 U.S. at 230, 92 S.Ct. 431; *White*, 823 S.W.2d at 299–300; *Armour*, 606 S.W.2d at 894; *Billie v. State*, 605 S.W.2d 558, 562 (Tex.Crim.App.1980).

\*　　\*　　\*

We sustain Blackshear's second issue and reverse and remand the trial court's judgment for proceedings consistent with this opinion.

**2.** Although the United States Supreme Court and the Court of Criminal Appeals have consistently treated the failure to provide an indigent defendant with a copy of the transcript of a previous trial before retrial as reversible error, the State urges us to apply a harm analysis, noting that *White* pre-dated *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997), in which the State argues the Court of Criminal Appeals held that only structural error is immune to a harm analysis. The State also directs us to *Canales v. State*, 290 S.W.3d 469, 472 (Tex.App.-Amarillo 2009, pet. ref'd), arguing that the Amarillo court of appeals noted it was required to presume harm under *White*, but "nevertheless conducted a harm analysis." The *Canales* court's harm analysis, however, was offered in the alternative to the position the court ultimately took, which is that "because *White* has not been overruled, we ... presume that appellant was harmed by the trial court's decision to withhold from him a transcript of the prior trial." *Id.* Notably, the Court of Criminal Appeals refused to review *Canales*. Therefore, we agree with the Amarillo court's disposition in *Canales*; because *White* has not been overruled, we presume Blackshear was harmed by the denial of his motion for continuance.