Jimmy Lee **CUDJO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–09–00263–CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 2011.

Rosa Eliades, Houston, for Appellant.

Donald W. Rogers, Houston, for Appellee.

Panel consists of Justices FROST, JAMISON, and McCALLY.

## OPINION

MARTHA HILL JAMISON, Justice.

Appellant Jimmie Lee Cudjo appeals his conviction for felony aggravated assault. The jury found him guilty and, after a punishment hearing, found the enhancement allegation in the indictment true, and assessed punishment at 60 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. In three issues, appellant contends that the trial court (1) violated his Sixth Amendment right to counsel be-

cause his waiver of counsel was not effective for various reasons; (2) violated his rights to self-representation and due process by not ordering the State to produce discovery, not giving appellant time to review discovery, and requiring him to rely on appointed counsel for information; and (3) erred in permitting the State to comment to the jury on appellant's self-representation. We affirm.

### Procedural Background

Four days before the trial setting of March 9, 2009, appellant, who had been represented by court-appointed counsel since July 8, 2008, informed the trial court that he wished to represent himself because he and the prosecutor could not agree on a plea bargain: appellant wanted a six-year deal, and the prosecutor would agree only to seven.[1] The trial court informed appellant,

> Just because the State doesn't want to give you what you want doesn't mean your attorney's got anything to do with that. It's not her decision as to what's being offered to you, it's the State. And she can't do anything for you other than tell you and communicate with you what the State's offered you. And if the State won't offer you anything but that, she can't do anything about it.

The trial court admonished appellant that

- appellant "must comply with all of the technical rules of evidence and appellate procedure as an attorney would be required to do so";

- he was charged with "aggravated assault with a deadly weapon on a family member";

- he had the right to court-appointed counsel;

- he would not be able to claim that he had received ineffective assistance of counsel later because he was defending himself;

- he would "not be granted any special consideration because of [his] lack of formal legal training";

- "anybody that gets up here can say whatever they want to say about you and you don't really know how to stop them"; and

- "[y]ou really have no idea of what to talk to [the jury] about."

Appellant acknowledged each of these statements and confirmed that, despite his lack of legal training, he wanted to discharge his court-appointed attorney and represent himself.

The trial court also confirmed that appellant could read and write English, did not have any learning disabilities or "communication handicaps," graduated high school and attended one year of college, had no prior legal experience, and was not familiar with the Code of Criminal Procedure, the Texas Penal Code, or the Rules of Appellate Procedure. The following colloquy ensued:

> THE COURT: Have you ever been declared insane or treated for a mental illness?

---

1. The trial court asked appellant, "And are you going to defend yourself and be subject to all the rules of law as any attorney would be?" to which appellant replied,

   I mean, I'm not gonna mix words with you, sir, I'm scared. I'm sufficiently scared and afraid because I know I'm not a lawyer. But, I mean, that's—I don't know what else to do except I know that only—what separates me and Ms.—Ms. Prosecutor, which she's been very gracious, I'm not saying she hasn't, is 1 year.

   Appellant later told the jury that "a very good attorney" had been appointed to him but he had nonetheless opted to represent himself.

THE DEFENDANT: Yes, I've been treated for 'em, never been declared insane.

THE COURT: How long ago were you treated for mental illness?

THE DEFENDANT: I'm in, like, a C.B.T. program right now in the jail. It's for—but, I mean, I'm not insane or anything like that. It's a cognitive behavior therapy program in the Mental Health Unit.

THE COURT: Have you ever been hospitalized because of emotional and mental disorder?

THE DEFENDANT: Yes, sir.

THE COURT: And how long ago was that?

THE DEFENDANT: It was about 2002 or '3, something like that.

THE COURT: What was the particular disorder, please?

THE DEFENDANT: I've been diagnosed with bipolar mix—

THE COURT: Okay.

THE DEFENDANT: which is a mixture of Bipolar and major depression.

Appellant complained that trial was only four days away and he had not received any discovery or otherwise been able to view the evidence. He asked for a one-week continuance. The trial court denied appellant's request for a continuance,[2] granted his request to represent himself, and appointed his former counsel to stand-by and advise appellant as needed. The trial court informed appellant that he could ask his attorney to take over his defense at any time during the trial.

The trial court further admonished appellant before granting his request to represent himself:

THE DEFENDANT: Well, I just know that I'm going to fight as hard as I can—

THE COURT: No, you're not. . . . No, you're not. Not if you're going to represent yourself, you're not going to fight as hard as you can, sir. You're not going to fight at all. It's like going to see the doctor. And the doctor says, you need to have open heart surgery. And you say, I need to do that myself.

THE DEFENDANT: With all due respect, sir, it's—to them, to Madam Prosecutor and [my appointed counsel], it's just a case, probably out of hundred cases.

THE COURT: No, not really the case. That's not true. There is a real competition in courtrooms. There as real competition that is to your benefit. . . . So, yeah, she's not going to go to jail if you do. And she's probably not going to have any financial burden, whatever happens to you. But her representation is at stake. And, so, she is going to fight as hard as she can for you because it also helps her reputation and her skill levels. And you make a real big mistake if you want to try this case yourself. And I just tell you, you know, you're just making a big mistake and you're going to flat lose because you'll have no idea what to say, what to object to, what's admissible, what's not admissible. And the jury's going to, basically, think you're a fool.

. . . .

*See Burgess v. State,* 816 S.W.2d 424, 428 (Tex.Crim.App.1991) ("A request for a change in counsel cannot be made so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.").

**2.** The trial court later explained that he denied the continuance because appellant waited until a few days before trial to decide to represent himself and he had had an opportunity to review the discovery for a number of months prior through his appointed attorney.

[THE COURT:] If the jury gives you 40 or 50 years, you don't have to worry anymore, you're never coming out of the penitentiary.... Whereas, the offer that was made to you, you'd be coming out.

During trial, the State's prosecutor twice commented on the fact that appellant was representing himself. The prosecutor asked appellant during his cross-examination, "And you actually, in fact, have to be in control so much that you are representing yourself in court today; right?" And in closing argument, she commented: "How many victims out there ever think for one moment that when they have to come to court and be victimized again by an attorney questioning them, that it might just so happen, the rare occasion the actual perpetrator is questioning them?"

### Waiver of Counsel

In his first issue, appellant complains that the trial court violated his Sixth Amendment right to counsel because his waiver of counsel was not effective based on the following grounds: (1) the waiver was not voluntary because appellant faced a "Hobson's choice" between having ineffective counsel or representing himself; (2) appellant was not competent to waive his right to counsel because, as he informed the trial court, he suffered from bipolar disorder and depression; and (3) the waiver was not made knowingly and intelligently because the trial court did not confirm that appointed counsel had represented appellant effectively. Appellant asserts that these purported errors are not subject to harmless error analysis, but we need not reach that issue as we find no error by the trial court.

In all criminal prosecutions in which an accused may be punished by imprisonment, the accused has the right to assistance of counsel for his defense. U.S. Const. amends. VI, XIV; Tex.Code Crim. Proc. Ann. art. 1.05 (Vernon 2005); *see Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim. App.1997). In lieu of being represented by counsel, however, a defendant also has a Sixth Amendment right to prosecute his own legal defense. *Faretta,* 422 U.S. at 818–21, 95 S.Ct. 2525; *see also* Tex. Const. art. I, § 10; Tex.Code Crim. Proc. Ann. art. 1.05 (Vernon 2005). For the decision to represent one's self to be constitutionally effective, a defendant must make the decision (1) competently, (2) knowingly and intelligently, and (3) voluntarily. *Moore v. State,* 999 S.W.2d 385, 396 (Tex.Crim.App. 1999).

### 1. *Knowing, Intelligent, and Voluntary Waiver*

We address appellant's first and third arguments together regarding whether appellant's waiver was knowing, intelligent, and voluntary. Appellant argues that his decision to represent himself was rendered involuntary because his attorney was ineffective—thus putting him to a "Hobson's choice"[3] between representing himself and relying on ineffective counsel. Appellant further complains that "appointed counsel's failure to review the discovery and the evidence with him render the waiver involuntary because it was not done knowingly and intelligently" in light of the fact that the trial court did not confirm whether appointed counsel had

---

3. A "Hobson's choice" is "[a]n apparently free choice that offers no real alternative. [After Thomas *Hobson* (1544–1631), English liveryman, from his requirement that customers take either the horse nearest the stable door or none.]" THE AMERICAN HERITAGE DICTIONARY 615 (2d Ed. 1991) (alterations in original).

fulfilled her obligations to represent appellant properly.

■ A decision to waive counsel and proceed pro se is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. *Moore,* 999 S.W.2d at 396 n. 5. If such factors are not otherwise apparent from the record, a trial court's inquiry regarding the accused's waiver of counsel should center on his background, age, experience, and education. *See Johnson v. State,* 760 S.W.2d 277, 278 (Tex.Crim.App.1988). The accused should be aware there are technical rules of evidence and procedure and he will not be granted any special consideration solely because he asserted his pro se rights. *Id.* at 279. The trial court, however, need not follow a formulaic questioning or particular script in ascertaining the knowing and voluntary nature of an accused's waiver of counsel, and a written waiver of the right to counsel is not required. *See Burgess v. State,* 816 S.W.2d 424, 428–29 (Tex.Crim.App.1991).

Here, appellant had repeatedly asserted his desire to represent himself, despite numerous warnings from the trial court of the potential consequences. The trial court permitted appellant to represent himself only after (1) informing him he had an absolute right to appointed counsel; (2) admonishing him that he would be held to the same standards as an attorney and would have to suffer the consequences of failing to make an objection or making an improper one; (3) confirming that he knew the charges against him and the potential range of punishment; and (4) determining

that he could read and write English, had no learning disabilities or communication handicaps, and had graduated from high school and attended some college. *See Collier,* 959 S.W.2d at 626 (finding waiver valid after noting similar admonishments and determinations by trial court and stating "that the trial court tried repeatedly to impress upon appellant the extreme gravity of his request to proceed pro se and the likelihood that it was a serious mistake"). Appellant confirmed that he understood the dangers and disadvantages of self-representation as the trial court explained them to him, and thus his waiver was knowing and intelligent.[4]

■ Appellant's choice of self-representation, moreover, was not rendered involuntary merely because it was motivated by his unwillingness to proceed with the specific attorney appointed to represent him. The Court of Criminal Appeals, in a similar case, wrote:

[G]iven the option to proceed with unwanted counsel or to represent himself, and adequately admonished as to the dangers and disadvantages, [the defendant] persisted in his assertion of his right to self-representation. Implicit in that assertion is a valid waiver of the right to counsel. We perceive nothing unfair in putting an accused to this choice, so long as the trial court is satisfied he is competent to make it, and that he does so informedly and with eyes open.

*Burgess,* 816 S.W.2d at 429. At trial, appellant did not show adequate cause for appointment of a new attorney. *See Thomas v. State,* 550 S.W.2d 64, 68 (Tex. Crim.App.1977) ("The defendant must ac-

---

4. We and the First Court of Appeals have both held, moreover, that admonishments to a defendant about the perils of self-representation are not required (though preferable) when, as in this case, standby counsel has been ap-

pointed. *See Robertson v. State,* 934 S.W.2d 861, 864–66 (Tex.App.-Houston [14th Dist.] 1996, no writ); *see also Walker v. State,* 962 S.W.2d 124, 126–27 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd).

cept counsel assigned by the court unless he effectively waives right to counsel in order to represent himself, *or can show adequate cause for appointment of a different attorney.*") (citation omitted) (emphasis added). On appeal, he merely points to his statements to the trial court that he was "scared" and did not "know what else to do" and that his counsel had not filed any motions.[5] He cites no authority to support his argument that "appointed counsel's failure to review the discovery and the evidence with [appellant] render the waiver involuntary because it was not done knowingly and intelligently." The record, in fact, does not show that appellant was dissatisfied with his appointed counsel, but only that appellant wanted to represent himself because the State would not give him the plea deal he wanted and he thought that his appointed attorney would not fight as hard as he would to get an acquittal. He told the jury, "I was appointed ... a very good attorney. She has been very helpful to me."

Appellant voluntarily chose to forego representation by his appointed counsel and repeatedly asserted his right to self-representation after being fully informed of its dangers and disadvantages. The trial court thus had no choice, under these circumstances, but to allow appellant to represent himself, despite the court's numerous attempts beforehand to dissuade him from that course of action. *See Burgess,* 816 S.W.2d at 428–29 ("[S]hould the trial court deny new counsel, and the accused unequivocally assert his right to self-representation under *Faretta,* persisting in that assertion after proper admonishment, the court must allow the accused to represent himself."). We, accordingly, hold that appellant's waiver of his right to counsel was made voluntarily, knowingly, and intelligently.

### 2. *Competent Waiver*

■ Appellant complains that he was not competent to waive his right to an attorney because he had previously been hospitalized for bipolar disorder and depression and, at the time of trial, was in a cognitive behavioral therapy program in the mental health unit in jail.

■ The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. *Indiana v. Edwards,* 554 U.S. 164, 172, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008); *see also Dunn v. State,* 819 S.W.2d 510, 523 (Tex.Crim.App. 1991). The standard for waiving the right to counsel, generally, is no higher than that for competency to stand trial: "[1] whether [the accused] has sufficient present ability to consult with his lawyer with

5. Appellant's brief also states, "Mr. Cudjo stated that appointed counsel had not prepared for trial or met with him prior to trial." There is no cite to this statement in the record, and the record reflects otherwise: appellant told the trial court, "But as of six months into this case ..., I asked my attorney what was going on with the investigation.... She came up here to see me. And she sent someone else from her company up here to see me." Appointed counsel, moreover, explained to the trial court that her investigator had spoken with appellant many times regarding the status of the investigation and information regarding potential witnesses. Appellant did tell the trial court that he had not had an opportunity to obtain discovery, look at his attorney's notes, or "look at any of the evidence." But appellant has not shown how this amounts to ineffective assistance by his appointed counsel, especially when appellant waited until virtually the eve of trial to waive his right to counsel. *See Robles v. State,* 577 S.W.2d 699, 704 (Tex.Crim.App. 1979) ("[A]n accused's right to represent himself or select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.").

a reasonable degree of rational understanding and [2] whether he has a rational as well as factual understanding of the proceedings against him." *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex.Crim.App. 2010) (citing *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)) (alterations in original). In *Indiana v. Edwards*, however, the United States Supreme Court "recognized a 'mental-illness-related limitation on the scope of the self-representation right.'" *Id.* at 561 (citing *Edwards*, 554 U.S. at 171, 128 S.Ct. 2379). The *Edwards* Court held that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so," thus permitting "States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* (citing *Edwards*, 554 U.S. at 177–78, 128 S.Ct. 2379). While recognizing that the lack of mental competence can only *under some circumstances* form the basis for denying the right to proceed pro se, the *Edwards* Court noted that "the trial judge ... will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* (citing *Edwards*, 554 U.S. at 177, 128 S.Ct. 2379) (omission in original).

■ With these foundational principles in mind, we observe that "the trial judge is in the best position to make the decision of whether a mentally ill defendant is competent to proceed pro se." *Id.* We, accordingly, review the trial judge's ruling for an abuse of discretion. *Id.* Mental competency to represent one's self is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, so we must give almost total deference to the trial court's ruling on this issue. *Id.* We view the evidence in the light most favorable to the trial court's ruling and will imply any findings of fact supported by the evidence and necessary to support the trial judge's ruling when the judge failed to make explicit findings. *Id.*

The trial court, in allowing appellant to represent himself, did not explicitly find that appellant was competent to waive counsel. But the following evidence supports an implied finding that appellant's mental illness was not severe enough to render appellant incompetent to represent himself. *See id.* at 562. Appellant, in the past, had been treated for bipolar disorder and depression and, at the time of trial, was being held in the cognitive behavioral therapy program in the mental health unit in jail. Despite this, appellant showed an ability to communicate clearly and conduct himself appropriately in court. Appellant was respectful to the trial court, the prosecutors, the witnesses, for the most part, and the jury; he proceeded in an orderly fashion as guided by the trial court; he asked coherent questions, for the most part, when he cross examined the State's witnesses and presented himself as a witness [6]; he objected to several questions and comments by the prosecutors; and he clearly presented and articulated defenses of self defense and lack of motive.[7]

---

6. The trial court required appellant to present his testimony in question-and-answer format so that the State would have an opportunity to object as needed.

7. Appellant admitted that he stabbed the complainant, Ochenna Okeke, but claimed that she attacked him first and that he stabbed her in self defense. He further attempted to show that he had no motive to attack Okeke.

■ No evidence in the record, moreover, shows that appellant's mental illness interfered with his functioning when trial commenced. *See Edwards*, 554 U.S. at 165, 128 S.Ct. 2379 ("[T]he nature of mental illness-which is not a unitary concept, but varies in degree, can vary over time, and interferes with an individual's functioning at different times in different ways . . . ."); *see also Moore*, 999 S.W.2d at 395 ("To raise the issue of competency by means of the defendant's past mental health history, there generally must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation."). And bipolar disorder, standing alone, does not preclude a competent waiver of counsel without some additional showing the defendant is mentally incompetent to represent himself. We hold, under these circumstances, the trial court did not abuse its discretion in allowing appellant to represent himself. *But cf. Chadwick*, 309 S.W.3d at 562 (affirming trial court's implied finding of incompetency to waive counsel when appellant had "engaged in a rambling monologue in which he launched personal attacks on the prosecutor, the judge, the bailiffs, judges from prior cases, and his attorney" and, before that, had filed "several incoherent pro se written motions").

For the preceding reasons, we overrule appellant's first issue.

### *Discovery*

■ In his second issue, appellant complains that the trial court violated his rights to self-representation and due process by not ordering the State to produce discovery, not giving appellant time to review the discovery through a trial continuance, and requiring appellant to rely on standby counsel to inform him of any evidence counsel deemed relevant.

Appellant was admonished correctly that he would be required to follow "all of the technical rules of evidence and appellate procedure as an attorney would be required to do so." *See Williams v. State*, 252 S.W.3d 353, 356 (Tex.Crim.App.2008) ("When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant 'that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights.' ") (citation omitted). Appellant did not ask the trial court to order the State to produce discovery and thus has not preserved that issue for appeal. Tex.R.App. P. 33.1(a) (to preserve complaint for appellate review, requiring party to have presented to trial court timely request, objection, or motion stating specific grounds for ruling desired); *see Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App.2009) (noting due process rights are subject to procedural default). Likewise, appellant was required to present a sworn written motion for continuance to preserve error on that issue for appeal, but he did not do so. *See Anderson*, 301 S.W.3d at 280 (holding appellant forfeited appellate due-process challenge to trial judge's denial of his unsworn oral continuance motion by failing to comply with procedural requirements); *McClinton v. State*, 38 S.W.3d 747, 750 (Tex.App.-Houston [14th Dist.] 2001), *pet. dism'd*, 121 S.W.3d 768 (Tex.Crim.App. 2003) ("If a motion for continuance is not sworn and in writing, nothing is presented for our review."). We thus hold that appellant has waived these issues, and we do not consider them on appeal.

■ Appellant's remaining complaint is that he was deprived of due process when the trial court required him to rely on discovery that had been provided to his appointed counsel. We disagree. Appel-

lant waited until six months into the case, four days before trial, to request to represent himself. Appellant then notified the trial court that he had not had a chance to look at the medical evidence or the State's pictures. The trial court responded, "Well, that's because you decided to represent yourself, you know, 48 hours before you were to start trial. But you've had an attorney for a number of months. . . ." Appellant was not entitled to waive his right to counsel a few days before trial and then delay trial to review evidence that his appointed counsel already had had ample time to review. *See Dunn,* 819 S.W.2d at 520 (holding right to effective assistance of counsel "cannot be manipulated in such a manner so as to throw the trial process into disarray"). Appointed counsel also notified the trial court that her investigator had met with appellant many times before trial and reported to him "everything that she has done in the investigation, information that she had concerning the witnesses, and that sort of thing." Appellant also admitted that his counsel previously had met with him in jail. The trial court informed appellant that appointed counsel had access to any information that appellant had not seen and would be with him at trial to assist. We hold that appellant was not deprived of due process in having to rely on appointed counsel under these circumstances, particularly when he initiated his right to self-representation so close to trial. *See Barnes v. State,* 921 S.W.2d 881, 882 (Tex.App.-Austin 1996, writ ref'd).[8]

We overrule appellant's second issue.

***

**8.** In holding the appellant's choice of self-representation was not rendered involuntary because it was motivated by the appellant's unwillingness to proceed with his appointed attorney, the Third Court of Appeals noted: Appellant's unhappiness with the attorneys who were appointed to represent him stemmed from his unwillingness to trust them to prepare for trial. Appellant filed a pro se motion for discovery and demanded that he personally be given all the material listed in the motion. Appellant was not willing to accept counsels' assurances that they had seen the prosecutor's file and otherwise been provided appropriate discovery. *Id.*

### Comments on Self–Representation

■■■■■■ In his third issue, Appellant contends that the trial court erred in permitting the State to comment on appellant's asserting his right to self-representation during the State's cross-examination of appellant and during the State's closing argument.

■■■■■■ To preserve error, a defendant must make a timely and specific objection. Tex.R.App. P. 33.1(a); *Ganther v. State,* 187 S.W.3d 641, 649 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). Thus, a general objection does not preserve error on appeal-the legal basis for the objection must be specifically stated. *Valdez v. State,* 826 S.W.2d 778, 782 (Tex.App.-Houston [14th Dist.] 1992, no writ). Absent an objection, a defendant waives error unless it is fundamental-that is, the error creates egregious harm. *Ganther,* 187 S.W.3d at 650. Egregious harm is such harm that a defendant has not had a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *id.*

Appellant did not object to the State's question during his cross-examination, "And you actually, in fact, have to be in control so much that you are here representing yourself in court today; right?" Appellant did object to the State's rhetorical question during closing argument, "How many victims out there ever think for one moment that when they have to come to court and be victimized again by

an attorney questioning them, that it might just so happen, the rare occasion the actual perpetrator is questioning them?" as follows, "She [the victim] never knew that I was going to be representing myself." Appellant did not state the legal basis for this objection. Appellant, thus, did not properly preserve error on appeal as to either comment by the State. *See Valdez*, 826 S.W.2d at 782.

Even if appellant had preserved error, it was harmless error. From the record it is evident that the jury was well aware that appellant was exercising his right to represent himself. This was discussed with the jurors by the judge, appellant, and the State during voir dire, when the jury was empaneled, and during trial. The jurors were aware that the trial was not going to operate as it normally would if appellant was represented by counsel. Notably, appellant also commented during his closing argument, "I chose to represent myself. So no one made me represent myself. I chose to do this, so I'm not trying to say it's their fault." Even if appellant had preserved his complaint about the prosecutor's comments for our review and they were error, their effect was dissipated, did not interfere with the functioning of jury in determining the facts, and did not contribute to the verdict. *See id.* Thus, the error created by the State's comments, if any, was harmless. The State, moreover, did not ridicule or impugn appellant's choice of self-representation, and the State's comments did not rise to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. *See Ganther*, 187 S.W.3d at 650. The error, if any, in the State's comments, accordingly, did not create egregious harm.

We overrule appellant's third issue.

### Conclusion

Having determined that the trial court did not commit error, we overrule appellant's issues on appeal. The judgment of the trial court is affirmed.