

## NUMBER 13-13-00013-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**NICHOLAS GARCIA,** 　　　　　　　　　　　　　　　　　　　　**Appellant,**

**v.**

**THE STATE OF TEXAS,** 　　　　　　　　　　　　　　　　　　　**Appellee.**

**On appeal from the 148th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides
Memorandum Opinion by Justice Benavides**

Appellant Nicholas Garcia was convicted of aggravated assault, enhanced to a first-degree offense because of a prior felony, *see* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through 2013 3d C.S.), and felony family violence assault, enhanced to a second-degree felony because of a prior felony. *See id.* § 22.01(b)(2) (West, Westlaw

through 2013 3d C.S.). Garcia was sentenced to twenty-five years in prison for the aggravated assault charge and twenty years for the felony family violence assault charge, with the sentences ordered to run concurrently. By two issues, Garcia contends the trial court erred: (1) by failing to order a jury trial on his competency after trial had begun, and (2) in assessing punishment that was allegedly disproportionate to the seriousness of the offenses. We affirm.

## I. BACKGROUND

Garcia was indicted for aggravated assault for striking and choking his ex-girlfriend when he believed she was unfaithful. *See id.* § 22.02. On October 17, 2011, Garcia's attorney, Irma Sanjines, filed an "Unopposed Motion Suggesting Incompetency and Request for Examination." The motion represented that Garcia had previously been found incompetent to stand trial in a separate February 2010 criminal case. The motion also asserted the following:

> In conversations with counsel, Nicholas Garcia appears not to understand common principles of law regarding jurisdiction and the course and procedure of a case in court. He speaks of concepts that are incomprehensible to this attorney. Moreover, he has given counsel a narrative of his beliefs which appears to be rambling and incoherent.

The trial court granted this motion and ordered Garcia to be examined for competency. According to notes on the court's docket sheet, Dr. Troy Martinez evaluated Garcia for competency on November 17, 2011. A March 3, 2012 docket entry reveals that Garcia was "found competent." Although Dr. Martinez's competency report is not in the appellate record, there are several instances in the record where all parties acknowledge that Garcia was found competent to stand trial. For example, during one pretrial hearing, the trial court asked, "Okay. We're still waiting for a competency report?," and the court

2

clerk responded, "Your honor, that came back, and he is competent to stand trial." No objections were made.

On February 23, 2012, Sanjines filed a motion to withdraw as counsel. In her motion, Sanjines represented that good cause existed for her removal because Garcia "refuse[d] to discuss the facts of the case" with her and did not seem "to get past his constitutional law arguments to counsel." Sanjines also reported that Garcia "[did] not trust counsel." The trial court granted Sanjines's motion and on March 1, 2012, appointed Stephen Giovannini to represent Garcia.

Despite having an appointed attorney, Garcia filed several pro se pretrial motions on his own behalf. These motions included a Motion for Discovery, Motion for Continuance, Motion for Discovery and Inspection, Motion for Payment of Records, Motion to Withdraw Insanity Defense[1], and Waiver of Counsel. A review of these motions reveals that they are boilerplate, typical pretrial motions. However, Garcia filed several other pro se motions that advanced unusual legal theories, such as:

1. <u>Motion for Incarceration</u>. In this motion, Garcia argued that he had the right to assault his girlfriend because she signed a contract with him allowing him to punish her for any alleged "defiance" on her part.

2. <u>Motion Suggesting Criminal Courts Incompetency to Make Trial and Request for Examining Trial to Evaluate the Competence of the Courts</u>. Here, Garcia appeared to argue that the State's inability to "understand truth" would infringe on his Due Process and First Amendment rights under the U.S. Constitution.

3. <u>Motion for Personal Recognition Bond</u>. Here, Garcia reasserted the same arguments set forth in his previous "Criminal Courts Incompetency" motion.

---

[1] This motion was filed in response to Giovannini's Motion for Examination Regarding Insanity Defense. The trial court granted the motion for examination on June 7, 2012.

3

4. <u>First Amended Motion Suggesting Criminal Courts Incompetency to Make Trial and Request for Examining Trial to Evaluate the Competence of the Courts</u>, reasserting the same arguments as above but including more case citations.

5. <u>First Amended Motion for Incarceration</u>.  Here, Garcia re-urged that his assault on his girlfriend was authorized by contract because his girlfriend "violate[d] a direct instruction from Nicholas Garcia . . . by practicing unauthorized vengeance and . . . Harlotry. . . ."

6. <u>Motion to Subject Punishment to Death Sentence</u>.  In this motion, Garcia offered his own life in support of his arguments against the competence of the court.

7. <u>Motion to Dismiss</u>.  This motion contended that his indictment infringed on his contractual rights.

At an April 30, 2012 hearing, Garcia testified that he wanted to represent himself to continue to file motions that his attorney Giovannini was unwilling to file on his behalf. Garcia testified that although he trusted his lawyer, he felt strongly about advancing certain alleged defenses that his lawyer refused to argue.  For example, Garcia reiterated to the court that he had a contract with the victim that allowed him to "punish" her for any violations of the contract.   Garcia explained that he had "a notarized contract between [himself] and the victim stating the conditions between our relationship.   It's more of a practice of our constitutional rights, which I understand that State law cannot intervene in . . . ."   The trial court granted Garcia's request to proceed pro se, but had attorney Giovannini remain on the case in an advisory capacity only.   The court made it clear that Giovannini was not Garcia's counsel.

Thereafter, Garcia represented himself at pretrial hearings.   He again urged through his motions that the State should not prosecute him for the assault because he had the contractual right to punish his ex-girlfriend for her violation of their contract.   The

trial court denied his motions. At voir dire, Garcia questioned the venire panel on several topics, including their prior military service and whether any venire persons believed they would allow emotion to cloud their judgment.

At the guilt-innocence phase of trial, Garcia cross-examined his victim thoroughly. He challenged the extent of her injuries and adduced testimony that she willingly signed the contract allowing him to "punish" her for any infidelity. When Garcia testified on his own behalf, he readily admitted that he hit the victim but denied that it was out of anger. Instead, he stated he was merely exercising his rights under the terms of the contract. During the punishment phase of the trial, Garcia cross-examined all of the State's witnesses, including two police officers, two former girlfriends, and an assistant district attorney. Further, he called several members of his own family—two sisters and his mother—to testify as his defense witnesses, although they did not provide helpful testimony to his cause. The jury ultimately convicted Garcia of aggravated assault and felony family violence assault. S*ee id.* § 22.02, § 22.01(b)(2). The trial court postponed sentencing for a presentence investigation.

At sentencing, Garcia requested that Giovannini be re-appointed as his court-appointed attorney. The trial court granted his request. Giovannini, during argument, mentioned a psychological report from Dr. Martinez[2] wherein he diagnosed Garcia as a "narcissistic delusional" person. There was also a remark that Garcia had previously been committed to mental health institutions at three different times in his life. Giovannini urged the court to consider probation in light of Garcia's obvious mental health

---

[2] It is unclear from the record when Dr. Martinez wrote this report.

5

issues.   The trial court disagreed and sentenced Garcia to twenty-five years in prison for the aggravated assault charge and twenty years for the felony family violence assault charge.   The sentences were ordered to run concurrently.   This appeal ensued.

## II. FAILURE TO CALL A COMPETENCY HEARING

By his first issue, Garcia contends the trial court erred when it failed to call a competency hearing after trial had begun.

### A.      Applicable Law

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence."   TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West, Westlaw through 2013 3d C.S.).   Under Texas Code of Criminal Procedure article 46B.004, any "suggestion" of incompetency to stand trial calls for an "informal inquiry" to determine whether a formal competency trial is warranted.   *See Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013); *see* TEX. CODE CRIM. PROC. ANN. art. 46B.004 (West, Westlaw through 2013 3d C.S.).   A person can be considered incompetent if:   (1) they do not have sufficient present ability to consult with their lawyer with a reasonable degree of understanding or (2) they do not have a rational and factual understanding of the proceedings.   *Id.* art. 46B.003(a).

The Texas Court of Criminal Appeals explained that there is a difference between one who is incompetent as opposed to mentally ill:

> The fact that a defendant is mentally ill does not by itself mean he is incompetent. Nor does the simple fact that he obstinately refuses to cooperate with his trial counsel.   Indeed, even a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy.   But when a defendant's mental illness operates in such a way as to prevent him from rationally understanding the

6

proceedings against him or engaging rationally with counsel in the pursuit of his own best interests, he cannot be made to stand trial consistent with due process. Evidence that raises this possibility necessitates an informal inquiry, and if that inquiry reveals that the possibility is substantial, a formal competency trial is required.

*Turner*, 422 S.W.3d at 691.

A trial court's decision to conduct an incompetency trial is reviewed under an abuse of discretion standard. *See Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Id.*

## B. Discussion

The trial court did not conduct an informal inquiry into Garcia's competency after trial began. However, prior to trial, the court ordered that Dr. Martinez evaluate Garcia for competency. Although Dr. Martinez's report is not in the appellate record before us, there are references in the record's docket sheet that indicate that Garcia was "found competent." No party objected to this finding.

Further, we find nothing in the record that suggests the trial court abused its discretion in not ordering a competency hearing after trial began. Throughout the course of the proceedings, Garcia appeared to have "a rational and factual understanding of the proceedings." *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). For example, in voir dire, Garcia showed that he understood the mechanics of jury selection by asking questions which might reveal jury biases, such as whether jurors might be inclined to let their emotions sway their rational judgment during trial. During the guilt-innocence phase of trial, although Garcia made several unconventional and ultimately unsuccessful arguments, he adhered to the rules of court by calling, questioning, and cross-examining witnesses. He also responded appropriately whenever the trial court sustained or

7

overruled objections to testimony. While the record showed that Garcia had mental health issues—Giovannini mentioned a report that found Garcia to be "a narcissistic delusional"—this fact is not dispositive of the competency analysis. *See Turner*, 422 S.W.3d at 691. Garcia's actions representing himself pro se showed that he understood what was at stake at his trial.

Garcia also argues on appeal that he was not competent to conduct his own pro se defense because of his mental health illness. There is a "mental-illness-related limitation on the scope of the self-representation right." *Indiana v. Edwards*, 554 U.S. 164, 171 (2008); *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). In *Edwards*, the United States Supreme Court held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. at 178. "The trial judge is in the best position to make the decision of whether a mentally ill defendant is competent to proceed pro se." *Chadwick*, 309 S.W.3d at 561. Appellate courts have upheld a trial court's decision to allow self-representation when the defendant

> showed an ability to communicate clearly and conduct himself appropriately in court. Appellant was respectful to the trial court, the prosecutors, the witnesses, for the most part, and the jury; he proceeded in an orderly fashion as guided by the trial court; he asked coherent questions, for the most part, when he cross examined the State's witnesses and presented himself as a witness; he objected to several questions and comments by the prosecutors; and he clearly presented and articulated defenses of self[-]defense and lack of motive.

*Cudjo v. State*, 345 S.W.3d 177, 186 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

8

Here, at the pretrial hearing on the motion to withdraw, the trial court made it clear to Garcia the risks he undertook in not having an attorney represent him. Out of an abundance of caution, the trial court ordered Giovannini, Garcia's previous counsel, to serve as an "advisor" to Garcia throughout the voir dire and trial proceedings. We again note, though, that Garcia's conduct throughout his trial indicated that he understood the nature and severity of the proceedings against him. Although the substance of his defense was outlandish at times, he demonstrated an appreciation for the judicial system and its procedures. The trial court's determination did not violate *Edwards* or *Chadwick*. *See Edwards*, 554 U.S. at 171; *Chadwick*, 309 S.W.3d at 561.

In light of the foregoing, we conclude that the trial court did not abuse its discretion when it did not call a competency hearing after trial began. We overrule Garcia's first issue.

### III. THE PROPORTIONALITY OF PUNISHMENT

By his second issue, Garcia contends that his sentence was disproportionate to the seriousness of the offenses for which he was found guilty. Garcia asserts that the trial court's assessment of twenty-five years' incarceration for aggravated assault and twenty years' incarceration for felony family violence assault is cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution, *see* U.S. CONST. amend. VIII; Article 1, Section 13 of the Texas Constitution, *see* TEX. CONST. art. I, § 13; and "well established case law" by the Texas and federal courts.

As a threshold matter, the State argues that Garcia did not preserve his constitutional challenge to the trial court's sentence. *See Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) ("Preservation of error is a systemic requirement on

appeal."). We agree. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. *See* TEX. R. APP. P. 33.1(a). This rule applies to complaints about the disproportionality of a sentence imposed by the trial court. *See Smith v. State*, 821 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object."); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston 1997 [1st Dist.], pet. ref'd) (finding that appellant failed to object to the alleged disproportionality of the sentences thereby waived error for review).

Here, no objection was made to the trial court's sentence nor was it raised in a post-trial motion. As a result, we hold that Garcia's issue is unpreserved for our review. *See* TEX. R. APP. P. 33.1(a); *Wilson*, 311 S.W.3d at 473–74. Garcia's second issue is overruled.

## IV. CONCLUSION

Having overruled both of Garcia's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of October, 2014.

10